**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Harvey Pratt

     v.                                    Civil No. 05-cv-367-SM

New Hampshire Department
of Corrections, et al.

**REPORT AND RECOMMENDATION**

*Pro se* plaintiff Harvey Pratt has filed a complaint and
amendment thereto, pursuant to 42 U.S.C. § 1983, alleging that
defendants have violated his rights under the First, Eighth and
Fourteenth Amendments to the United States Constitution and New
Hampshire law (document nos. 1 and 9).  He seeks injunctive,
declaratory and monetary relief under Section 1983 and attorneys
fees under 42 U.S.C. § 1988.  Named as defendants are numerous
employees and officers of the New Hampshire Department of
Corrections ("NHDOC"), New Hampshire State Prison ("NHSP") and
Northern New Hampshire Correctional Facility ("NCF").[1]  Also

---

[1]The NHDOC and following NHDOC employees are named as
defendants: Stephen J. Curry, Commissioner; William Wren,
Commissioner; John Vinson, Legal Counsel; Robert MacLeod,
Administrative Chief of Medical/Forensic Services; and Irene
McCormack, Sex Offender Program Coordinator.  Also named as a
defendant is John Eckert, Secretary to the New Hampshire Adult
Parole Board ("Parole Board").

named as defendants are three physicians allegedly acting as
agents or servants of the NHDOC: Dr. James K. Wolcott of Concord
Hospital; Steven V. Manzi of Concord Hospital; and Stanley W.
Whitaker of Androscoggin Hospital.  The complaint is before me
for preliminary review to determine whether, among other things,
it states a claim upon which relief may be granted.  See 28
U.S.C. § 1915A; U.S. District Court for the District of New
Hampshire Local Rule ("LR") 4.3(d)(2).

For the reasons stated below, I find that Pratt has alleged
the following claims: (1) Fourteenth Amendment due process
claims, arising from his disciplinary proceedings, against Curry,
Vinson, Cattell, Cunningham, Gardiner, Dunnack, Kingsbury, Black,
Toriz, Chessman, Denis, Desmond, Howlett, Morin, Shaw, J.L. and

---

The following NCF employees are named as defendants: Larry
Blaisdell, Acting Warden; Dr. Eppolito; Judy Baker, ARNP;
Tina Withington, Head of Classifications; Dan Millis, Unit
Manager; Elmer Van Hoesen, Counselor; Lieutenant Greenwood;
Lieutenant Jebson; Sergeant Hill; and corrections officer Dennis
Cox.

The following NHSP employees are named as defendants: Bruce
Cattell, Warden; Greg Crompton, Deputy Warden; Kim Lacasse, Head
of Classifications; Craig Thyng, Unit Manager; S. Dolan,
Counselor; Jeff Shanahan, Counselor.  The following NHSP
corrections officers are also named as defendants: Major
Cunningham; Major Dan Shaw; Lieutenant Thibeault; Lieutenant
Daniel R. Toriz; Sergeant Blake; Sergeant Desmond; Sergeant
Anthony Kingsbury; Sergeant J.L.; Sergeant Morin; P.N. Chessman;
K. Dennis; J. Dunnack; Gardiner; K. Howlett; and Pelletier.

Thibeault; (2) First and Fourteenth Amendment retaliation claims against Curry, Vinson, Cattell, Cunningham, Gardiner, Dunnack, Kingsbury, Black, Toriz, Chessman, Denis, Desmond, Howlett, Morin, Shaw, J.L. and Thibeault; (3) Fourteenth Amendment due process claims, arising from his classification as a "sex offender," against Curry, Wrenn, Vinson, Cattell, Blaisdell, Eckert, McCormack, Crompton, Lacasse, Shanahan, Thyng, Van Hoesen, Millis, Withington and Howlett; (4) Eighth Amendment denial of adequate medical care claims against Eppolito, Baker, Crompton and McLeod; (5) Fourteenth Amendment right to privacy claims, arising from the disclosure or dissemination of confidential medical information, against Baker and Eppolito; and (6) supervisory liability claims against Curry, Vinson, Blaisdell, Cattell and Crompton.  I further recommend that this Court exercise jurisdiction over Pratt's related supplemental state law claims.  I recommend dismissal of all remaining claims.

### Standard of Review

In reviewing a *pro se* complaint, this Court must construe the pleading liberally and in favor of the *pro se* litigant.  <u>See Ayala Serrano v. Gonzalez</u>, 909 F.2d 8, 15 (1st Cir. 1990) (following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)).  At this preliminary stage of review, all factual assertions made by the

3

plaintiff and inferences reasonably drawn therefrom must be accepted as true.  See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)(stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true).  This review ensures that *pro se* pleadings are given fair and meaningful consideration.  See Eveland v. Director of CIA, 843 F.2d 46, 49 (1st Cir. 1988).

### Background

Convicted of the charge of interference with custody under N.H. Rev. Stat. Ann. 633:4 (I)[2], Pratt is currently serving his sentence at the NCF.  This action stems from a series of events that occurred during his incarceration at the NHSP and NCF.

### First Incident

While incarcerated at the NHSP on September 16, 2002, Pratt was charged with three disciplinary infractions allegedly arising

---

[2]RSA 633:4,I provides, in relevant part:

A person is guilty of a class B felony if such person knowingly takes from this state or entices away from this state any child under the age of 18, or causes any such child to be taken from this state or enticed away from this state, with the intent to detain or conceal such child from a parent, guardian or other person having lawful parental rights and responsibilities as described in RSA 461-A.

N. H. Rev. Stat. Ann. § 633:4 (I).

out of the same course of conduct.  That day, Gardiner issued a
disciplinary report ("DR") against him for violating NHSP Rule
("Rule")[3] 35C (unexcused absence from work or place of
assignment).  Gardiner allegedly failed to notify Pratt of the
charges or serve him with a copy of the DR.  Later that day,
Dunnack issued a second DR against Pratt for violating both Rule
37A (being in an unauthorized area or being out of place) and
Rule 56B (lying or providing false or misleading information to
staff).

Kingsbury authorized the DR issued by Dunnack, and Blake
authorized the DR issued by Gardiner.  On September 18, 2002,
Toriz reviewed the above charges and dropped the charge under
Rule 56B; Pratt pled guilty to the remaining charges.  The NHDOC,
Curry, Vinson, Morin, Cunningham, Cattell and Toriz allegedly
condoned the conduct of Dunnack and Blake in subjecting Pratt to
the disciplinary actions.

From May 20, 2004 to July 16, 2004, Pratt appealed the two
DRs by filing inmate request slips with Morin, Cunningham and
Cattell.  His requests were denied on the basis that he pled
guilty to the charges, thereby waiving his right to appeal.  His

---

[3]The NHSP Rules are set forth in the <u>Manual for the Guidance
of Inmates</u>, at 43-47 (New Hampshire State Prison)(2004).

subsequent petition for declaratory ruling was denied by Vinson.
On July 26, 2004, Pratt appealed the administrative rulings by
filing a petition for a writ of certiorari with the New Hampshire
Superior Court (Merrimack County).  The court dismissed his
petition on October 12, 2004 and found that Pratt filed frivolous
litigation and his petition to be without legal merit.  The New
Hampshire Supreme Court affirmed the superior court decision on
July 19, 2005.

In this action, Pratt alleges that the charges filed by
defendants were false, illegal, made without probable cause and
violative of his Fourteenth Amendment right to due process and
the stacking provision of NHDOC Policy & Procedure Directive
("PPD") 5.25 (prohibiting multiple charges or stacking for the
same offense).  He further alleges that defendants' actions were
taken in retaliation for his filing of civil litigation and
administrative grievances, thereby violating his First Amendment
rights.

<u>Second Incident</u>

While Pratt was incarcerated at the NHSP on August 19, 2003,
Chessman observed him receive a piece of paper from another
inmate.  Chessman retrieved the paper and issued a DR against
Pratt for violating Rule 74B (conducting a business from within

the prison).  By signing the DR as a witness to the incident, Denis allegedly condoned the actions by Chessman.  Desmond authorized the DR issued by Chessman and witnessed by Denis.

On September 27, 2003, J.L and Thibeault conducted a hearing, whereby Pratt was found guilty of conducting a business in violation of Rule 74B.  Pratt allegedly was denied a written explanation for the actions taken against him.  During that time, Howlett allegedly knew that Pratt was labeled a "sex offender" but deliberately transferred him to room D-8 (a room that housed inmates who have known animosity toward sex offenders), thereby subjecting Pratt to an unreasonable risk of harm and safety. Pratt claims that the NHDOC, Curry, Vinson, Morin, Shaw and Cattell condoned the conduct of the subordinate officers with regard to the actions taken on August 19, 2003.

Pratt subsequently appealed the DR by filing inmate request slips with Morin, Shaw and Cattell.  His requests were denied on the basis that he pled guilty to the charges, thereby waiving his right to appeal.  His subsequent petitions for declaratory ruling and to vacate the disciplinary sanctions were denied by Vinson.

On or about July 26, 2004, Pratt appealed the administrative rulings by filing a petition for a writ of certiorari with the New Hampshire Superior Court (Merrimack County).  The court

dismissed his petition on October 12, 2004 and found that Pratt
filed frivolous litigation and his petition to be without legal
merit.  The New Hampshire Supreme Court affirmed the superior
court decision on July 19, 2005.

In this action, Pratt alleges that the charges filed by
defendants were false, illegal, made without probable cause and
violative of his Fourteenth Amendment right to due process.  He
further alleges that defendants' actions were taken in
retaliation for his filing of civil litigation and administrative
grievances, thereby violating his First Amendment rights.
Construed liberally, the complaint also alleges that Howlett[4]
violated Pratt's Eighth and Fourteenth Amendment rights by
placing him in danger or subjecting him to an unreasonable risk
of harm and safety.

### Third Incident

Pratt was deprived of a three volt alternating current (3V
AC) adapter without notice or a hearing.  The property allegedly
was stolen, subsequently recovered by prison officials on
September 28, 2004 and never returned to Pratt.  The NHDOC,

---

[4]When read in context with the supporting facts and
construed liberally, Pratt's conclusory claim (alleging
imposition of excessive punishment) alleges an Eighth Amendment
failure to protect claim against Howlett.

Curry, Vinson, Blaisdell, Cattell, Cunningham, Morin, Millis, Hill and Van Hoesen allegedly terminated Pratt's property interest without notice or a hearing.  In addition, the NHDOC, Curry, Vinson, Cattell, Cunningham, Morin and Millis allegedly condoned the deprivation of personal property.

From September 28, 2004 through December 6, 2004, Pratt filed inmate request slips with Morin, Cunningham, Millis and Cattell, all of which presumably were denied.  His demand letter to the NHDOC Commissioner was unanswered.  His subsequent complaint filed with the New Hampshire Superior Court (Coos County) was denied on the basis that the New Hampshire Board of Claims had exclusive jurisdiction over his claim.  He subsequently filed an appeal filed with the New Hampshire Supreme Court.  In this action, Pratt alleges that defendants' actions are violative of Fourteenth Amendment right to due process and PPD 1.35 (providing policy, procedure and guidance in presenting a claim for damages against the NHDOC).

<u>Fourth Incident</u>

Pratt was also deprived of a Christmas package, consisting of assorted chocolate and coffee, which he purchased on December 12, 2004 in the amount of $117.16.  When the package arrived at the prison on December 15, 2004, Hill advised Pratt that the

package must be shipped out of the prison.  Hill and VanHoesen
witnessed Pratt address the package to residents in
Massachusetts.  The package allegedly was destroyed and then
shipped to Massachusetts.  The NHDOC, Curry, Vinson, Blaisdell,
Cattell, Cunningham, Morin, Millis, Hill and Van Hoesen allegedly
terminated Pratt's property interest without notice or a hearing.

Pratt sought reimbursement for the destruction of his
property by filing a claim to recover the sum of $117.16,
pursuant to PPD 1.35 (providing policy, procedure and guidance in
presenting a claim for damages against the NHDOC).  Vinson denied
his claim without reason on March 25, 2005, thereby allegedly
condoning the destruction of property.  In this action, Pratt
alleges that defendants' actions are violative of his Fourteenth
Amendment right to due process and PPD 1.35.

### Fifth Incident

Pratt alleges that throughout the course of his
incarceration, Curry, Wrenn, Vinson, Blaisdell, Cattell, Eckert,
Crompton, Lacasse, Withington, Millis, Thyng, Van Hoesen,
Shanahan, McCormack and Howlett labeled and stigmatized him as a
sex offender, or condoned such actions.  He broadly alleges that
Greenwood participated in a hearing regarding his sex offender
classification.

Convicted of the charge of interference with custody under N.H. Rev. Stat. Ann. 633:4 (I), Pratt was sentenced to a term of incarceration of two to six years.  He claims that he entered the NHSP on November 21, 2001 and that his sentence will terminate in July 2007.  The trial court initially recommended to the NHDOC that he complete the sex offender program as a condition of parole.

Pratt broadly alleges that in January 2002, Lacasse labeled and stigmatized him as a "sex offender."  At that time, Pratt claims, he was within eighteen months of his minimum parole date and eligible for reduced custody status or C-2.  On March 18, 2002, McCormack recommended that he "would be a good candidate for the sex offender treatment program."  On May 22, 2003, the Parole Board denied Pratt parole eligibility because he had not completed the sex offender program.

Pratt filed several motions with the New Hampshire Superior Court (Rockingham County) to remove the sex offender program as a recommendation from his sentence.  On November 19, 2003 his sentence was vacated, and on July 21, 2004, his sentencing order was "amended to delete the recommendation to the Department of Corrections of the Sexual Offender Program, the deletion of the requirement that completion of that program be a condition of

11

parole . . . ."  The order further stated that Pratt "was to
participate meaningfully and complete any counseling, treatment
and educational programs as directed by the correctional
authority or Probation/Parole Officer."  On October 5, 2005, he
was transferred from the NHSP to the NCF.

From January 18, 2005 to July 13, 2005, Pratt filed several
request slips in which he requested that the sex offender program
"be removed as an assignment and recommendation to his
classification."  The request slips were filed with Curry,
Vinson, Cattell, Blaisdell, Eckert, McCormack, Crompton, Lacasse,
Shanahan, Thyng, Van Hoesen, Millis and Withington.  Pratt argued
that because the offense for which he was convicted was not a sex
offense or an enumerated offense under N. H. Rev. Stat. Ann. §
651-B:1[5], he should not be required to participate in the sex

_____

[5]RSA 651-B:1, III provides, in relevant part:

"Sexual Offender" means a person who is required to register
as a result of any violation or attempted violation of:

   (a) RSA 632-A:2, 632-A:3, 632-A:4, I(b) if the state
   actor was 21 years of age or older at the time of the
   offense, 645:I,II, or 645:I,III; or

   (b) A law of another state or the federal government
   reasonably equivalent to a violation of listed in
   subparagraph (a).

RSA 651-B:V provides in relevant part:

offender program.  Defendants allegedly failed to adequately respond to his requests by continuing to recommend that he participate in the sex offender program or requiring him to be re-evaluated in order to have the sex offender program recommendation removed from his classification.

In this action, Pratt alleges that by failing to remove the "sex offender" label from his records, or the requirement that he complete the sex offender program, defendants have labeled and stigmatized him as a sex offender in violation of his Fourteenth Amendment rights.

<u>Sixth Incident</u>

In February 2002, Pratt was assigned to H-Building.  During that time, the NHDOC and Chessman allegedly subjected him to an

---

"Offender against children" means a person who is required to register as a result of any violation or attempted violation of:

    (a) Any of the following offenses, where the victim was under the age of 18 at the time of the offense, RSA 633:1. 633:2, 633:3, 639:2 or 645:2; or

    (b) RSA 169-B:41,II, 639:3, 649-B:3, 649-B:4 or 650:2,II; or

    (c) A law of another state or the federal government reasonably equivalent to a violation of listed in subparagraph (a) or (b).

N. H. Rev. Stat. Ann. § 651-B:1.

unreasonable risk of harm and safety by placing and keeping him in C-Pod (also known as the gladiator pod), where inmates have known animosity toward sex offenders.

On March 25, 2002, two inmates residing in C-Pod discovered that Pratt was required to complete the sex offender program. That day, the two inmates confronted and assaulted Pratt, thereby causing him to sustain a broken nose, broken ribs and a laceration above his eye.  Pratt was treated in the infirmary and then directed to return to his housing unit where he was met by Pelletier.  When Pratt explained to Pelletier that he was in excruciating pain, suffering from broken ribs and needed further medical attention, Pelletier merely transferred him to A-Pod without providing him with additional medical care.

In this action, Pratt alleges that defendants violated his Eighth and Fourteenth Amendment rights by subjecting him to an unreasonable risk of harm and safety, by failing to protect him from attack by other inmates and by denying him adequate medical care.

<u>Seventh Incident</u>

While incarcerated at the NHSP and NCF, Pratt allegedly was denied adequate medical tests and treatment.  From November 21, 2001 through October 21, 2004, unidentified defendants allegedly

14

denied him adequate treatment for tuberculosis by prescribing him
Isoniazid ("INH") and Vitamin B6 supplements.  During 2004 and
2005, Baker allegedly improperly ordered a gram stain test and
barium swallow test and improperly conducted an electro
cardiogram test while Pratt was at rest.  From approximately
December 2005 through February 2006, Eppolito allegedly denied
Pratt tests for AIDS, hepatitis and C-reactive protein.

     In addition to being denied certain medical tests and
treatment, Pratt allegedly was denied adequate medical care for a
serious respiratory condition.  A report dated November 8, 2005
by Stanley W. Whitaker, M.D. of Androscoggin Hospital reveals
that Pratt had "hyperextended lungs on two views that could
represent obstructive disease or asthma . . ."  From November
2005 through January 2006, Eppolito and Baker personally met with
Pratt and allegedly had knowledge of his medical condition but
nevertheless denied him proper care.  In October 2005, Pratt
informed Eppolito of his recurring symptoms, including chest
pain, sweating, dizziness, lethargy, and requested that certain
cardiovascular tests be conducted.  Eppolito allegedly failed to
adequately respond to his requests.  In December 2005, Pratt
requested medical care for his hyperextended lungs; Baker
allegedly failed to adequately respond to his requests and only

15

offered him an inhaler to alleviate his symptoms.  In January 2006, Pratt relayed his above complaints to McLeod, who responded by scheduling an appointment for Pratt to be evaluated by Dr. Eppolito on May 9, 2006.  Pratt also relayed his complaints to Crompton, who denied his request for medical care.

In this action, Pratt alleges that defendants' acts and omissions constitute denial of adequate medical in violation of his Eighth Amendment rights.

<u>Eighth Incident</u>

On or about October 2005, Eppolito and Baker intentionally returned his confidential medical information, in plain view, through non-medical correctional staff.  In this action Pratt alleges that Baker and Epollito violated his Fourteenth Amendment right to privacy by disclosing and/or disseminating his private medical information without any legitimate penological reason.

<u>Ninth Incident</u>

During the course of incarceration at the NCF, Pratt allegedly has been deprived of sleep. On a daily basis, defendants require him to wake at 5 A.M. for a "stand count" and lock-down at 10:00 P.M., thereby affording him only five to six hours of undisturbed sleep.  Each morning at 5:00 A.M., defendants allegedly activate "electromagnetic locks" in rapid

16

succession, thereby creating a loud noise and interrupting his

sleep.  His sleep is further interrupted by corrections officers

announcing breakfast at 5:00 A.M. and other inmates who wake at

that time.   As a result of his alleged sleep deprivation, Pratt

claims, he suffers from tinnitus, fatigue, mood disorders,

decline in productivity and "accelerated deterioration in

health."   In this action, he alleges that Wrenn, Blaisdell, Cox

and Crompton have deprived him of sleep, or condoned such

deprivation, in violation of his Eighth Amendment rights.

Discussion

I.   <u>Claims Barred by the Statute of Limitations</u>

Upon review of the record, it is clear that the following

claims are time-barred because of Pratt's failure to file within

the statutory limitations period: (1) Eighth and Fourteenth

Amendment failure to protect claims against the NHDOC, Chessman

and Howlett; and (2) Eighth and Fourteenth Amendment denial of

medical care claims against Pelletier.

In adjudicating civil rights claims under 42 U.S.C. § 1983,

federal courts borrow the statute of limitations applicable to

personal injury actions under the law of the forum state.  <u>See</u>

<u>Wilson v. Garcia</u>, 471 U.S. 261, 276-80 (1985); <u>Calero-Colon v.</u>

<u>Betancourt-Lebron</u>, 68 F.3d 1, 2 (1st Cir. 1995).   The applicable

17

statute in this case is New Hampshire Revised Statutes Annotated 508:4, I (2003), which establishes a three-year limitations period for personal injury actions in New Hampshire.  Under federal law, which governs the accrual of claims brought pursuant to Section 1983, a claim accrues once the plaintiff knows or has reason to know of the injury which is the basis of the action. See Carreras-Rosa v. Alves-Cruz, 127 F.3d 172, 174 (1st Cir. 1997).

The limitations period governing an inmate's Section 1983 action may be tolled while he pursues administrative remedies under 42 U.S.C. § 1997e(a)(2000).  See Johnson v. Rivera, 272 F.3d 519, 521 (7th Cir. 2001).  The Prison Litigation Reform Act amended 42 U.S.C. § 1997e(a) to provide that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000)(quoting 42 U.S.C. § 1997e(a) (1999)); accord Smith v. Ortiz, No. 05-1211, 2006 WL 620871, at *4, (10th Cir. March 14, 2006); Harris v. Hegmann, 198 F.3d 153, 157-59 (5th Cir. 1999).  Prisoners therefore "are prevented from bringing suit in federal court for the period of

18

time required to exhaust 'such administrative remedies as are available'".  Id.  For this reason, the statute of limitations which applies to Pratt's civil rights action is tolled for the period during which his administrative remedies were being exhausted.  Brown, 209 F.3d at 596.

Pratt concedes that his Fourteenth Amendment failure to protect claims and Eighth Amendment denial of adequate medical care claim against Pelletier arose in February and March of 2002. The record reveals that during the relevant time period, he had knowledge of his injuries, therefore, his claims accrued no later than February and March 2002, respectively.  Given that Pratt filed the instant complaint on October 17, 2005, after the three-year limitations period had expired for his claims, I conclude that his claims are untimely.  Pratt has demonstrated no reason why the limitations period should be tolled.  Accordingly, I recommend that the above Eighth and Fourteenth Amendment claims be dismissed as time-barred.

II.  Claims Barred by the Doctrine of Res Judicata

Upon review of the record, it is clear that the following claims against the NHDOC are barred under the doctrine of res judicata: (1) First and Fourteenth Amendment due process and retaliation claims arising from Pratt's disciplinary charges of

19

September 16, 2003; and (2) Fourteenth Amendment due process claims arising from Pratt's disciplinary charges of August 19, 2003.

"Under federal law, 'a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was entered.'" Torromeo v. Town of Fremont, 438 F.3d 113, 115-16 (1st Cir. 2006)(quoting Migra v. Warren City School Dist. Bd. Of Education, 465 U.S. 75, 81 (1984). "This principal applies to a § 1983 action brought in federal court following a state-court judgment." Id. The effect of the New Hampshire state court's final judgment on Pratt's federal action is determined by applying New Hampshire's res judicata law. Id. at 116.

In Torromeo, the First Circuit explained the doctrine of res judicata under New Hampshire law:

> In New Hampshire, 'the essence of the doctrine of res judicata is that a final judgment by a court of competent jurisdiction is conclusive upon the parties in a subsequent litigation involving the same cause of action.' In re Juvenile, 888 A.2d 422, 425 (N.H. 2005). The doctrine precludes litigation in a later case of matters actually litigated, and matters that could have been litigated, in the earlier action. See Brzcia v. Trustees of Dartmouth Coll., 147 N.H. 443, 791 A.2d 990, 999 (2002). For res judicata to apply, three elements must be satisfied: (1) the parties must be the same or in privity with one another; (2) the same cause of action must be before the court in both

20

> instances; (3) a final judgment on the merits must have
> been rendered in the first action.  <u>See</u> <u>id.</u>  'Cause of
> action is broadly' defined to mean 'the right to
> recover, regardless of the theory of recovery.'  <u>McNair</u>
> <u>v. McNair</u>, 151 N.H. 343, 856 A.2d 5, 16 (2004).

<u>Id.</u>

Here, the three elements of res judicata are met as to the
above claims against the NHDOC.  First, a final judgment on the
merits was issued by the New Hampshire Supreme Court in two
separate actions: (1) <u>Pratt v. NH Department of Corrections</u>,
Docket No. 2004-0763 (dismissing Pratt's First and Fourteenth
Amendment due process and retaliation claims, arising from the
September 16, 2003 disciplinary proceedings, against the NHDOC);
and (2) <u>Pratt v. NH Department of Corrections</u>, Docket No. 2004-
0764) (dismissing Pratt's Fourteenth Amendment due process
claims, arising from the August 19, 2003 disciplinary
proceedings, against the NHDOC).  Second, there is sufficient
identity between the causes of action in the state court action
and this action as both seek relief under the First, Eighth and
Fourteenth Amendments and allege identical legal theories and
predicate facts with regard to each claim.  Third, both actions
name the NHDOC as a defendant.  Accordingly, I conclude that the
above claims against the NHDOC are barred under the doctrine of
res judicata.

III. <u>Section 1983 Claims</u>

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal law.  <u>See</u> 42 U.S.C. § 1983; <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981); <u>accord</u> <u>Conn v. Gabbert</u>, 526 U.S. 286, 290 (1999).  In order to be held liable for a violation under Section 1983, a defendant's conduct must have been a cause in fact of the alleged constitutional deprivation.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 692 (1978); <u>Soto v. Flores</u>, 103 F.3d 1056, 1061-62 (1st Cir. 1997).  The premise of Pratt's Section 1983 action is that defendants subjected him to the following constitutional deprivations in violation of his rights under the First, Eighth and Fourteenth Amendments to the United States Constitution.

A.   Denial of Procedural Due Process
     During Disciplinary Proceedings

Pratt alleges that on September 16, 2002, Curry, Vinson, Cattell, Cunningham, Gardiner, Dunnack, Kingsbury, Black, Toriz and Morin issued false DRs against him, or condoned such actions, in violation of his Fourteenth Amendment right to procedural due process and the stacking provision of PPD 5.25 (prohibiting multiple charges or stacking for the same offense).  He further alleges that on August 19, 2003, Curry, Vinson, Cattell,

22

Chessman, Denis, Desmond, Howlett, Morin, Shaw, J.L. and
Thibeault issued false disciplinary reports against him, or
condoned such actions, in violation of his Fourteenth Amendment
right to procedural due process.[6]

Pratt claims that he never received adequate written notice
of the charges against him and reasons for the discipline
imposed.  He further claims that the false information contained
in his DRs and record of incarceration have resulted in the loss
of good time credit and the denial of parole eligibility, reduced
custody status, prison job opportunities, hobby related
activities, recreation, housing assignments, rehabilitative
programs, self help programs and future employment opportunities.

The issuance of false disciplinary reports and provision of
false testimony against an inmate by corrections officers is
insufficient on its own to establish denial of due process.  See
Freeman v. Rideout, 808 F.2d 949, 950 (2d Cir. 1986) (an inmate
has no "constitutionally guaranteed immunity from being falsely
or wrongly accused of conduct which may result in the deprivation

---

[6]Because Pratt's Fourteenth Amendment claim arising from an
unidentified disciplinary charge filed by Van Hoesen is
conclusory and wholly lacking in predicate facts, I construe his
Fourteenth Amendment claims to be brought only against the above-
named defendants.

of a protected liberty interest."). However, such action violates due process where procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him. <u>Id.</u> at 952. Here, Pratt specifically alleges that he was denied procedural safeguards during the course of his disciplinary proceedings.

It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974). Under <u>Wolff</u>, "a prisoner facing a disciplinary hearing that may result in the loss of a liberty interest must receive: '(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and to present documentary evidence in his defense; (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action taken.'" <u>Smith v. Massachusetts Dep't of Correction</u>, 936 F.2d 1390, 1398 (1st Cir. 1991)(quoting <u>Superintendent, Massachusetts Correctional Institution v. Hill</u>, 472 U.S. 445, 454 (1985)). However, these procedural due process protections are afforded only when a prisoner's constitutional liberty interest is

24

implicated.  See Sandin v. Conner, 515 U.S. 472, 487 (1995).

In Sandin, the Supreme Court confirmed that the Wolff due process safeguards must be provided when, as in the instant case, the challenged disciplinary proceeding results in the loss of good time credits.  Id.  In Hamel v. Powell, this Court (Barbadoro, J.) held that a disciplinary hearing resulting in the loss of accrued good time credit implicated a protected liberty interest under New Hampshire state law.

> N. H. Rev. Stat. Ann. 651-A:22 provides that the Commissioner has discretion to award good time credit to eligible inmates. However, once good time credit has been awarded, it cannot be taken away unless the prisoner escapes or engages in a "serious act of misconduct or insubordination, or persistent refusal to conform to prison regulations during his confinement . . . ." N. H. Rev. Stat. Ann. ...651-A:22.  This statute is sufficient to give an inmate a protected liberty interest in accrued good time.

Hamel v. Powell, Civ. No. 91-385-B, 1994 WL 260678, at *2, (D.N.H. April 8, 1994).

Here Pratt alleges a Fourteenth Amendment due process violation stemming from disciplinary proceedings in which he was denied advance written notice of the charges against him and further denied a written statement of the evidence relied upon in support of the disciplinary actions against him.  To the extent he claims that defendants' actions resulted in the loss of

accrued good time credit[7], I conclude that he has alleged
sufficient facts to state a Fourteenth Amendment procedural due
process violation against the above defendants.

B.   Retaliation

Pratt alleges that defendants violated his First and
Fourteenth Amendment rights by subjecting him to unwarranted
disciplinary actions and/or transfers in retaliation for filing a
state court action to have his mandatory sex offender program
annulled and for filing administrative grievances.  Construed
liberally, the complaint alleges retaliation claims against
Curry, Vinson, Cattell, Cunningham, Gardiner, Dunnack, Kingsbury,

---

[7]Under federal and state law, Pratt has no protected liberty
interest in parole, see Greenholtz v. Inmates of Neb. Penal &
Correctional Complex, 442 U.S. 1, 7 (1979) and Brooker v. Warden,
No. 98-466-JD, 1999 WL 813893, at * 2 (D.N.H. June 22, 1999), or
custodial classification, see Moody v. Daggett, 429 U.S. 78, 88
n.9 (1976) and Reid v. Brodeur, No. 96-492-B, 2000 WL 1466147, at
*2  (D.N.H. Jan. 24, 2000).  Nor does he have a protected liberty
interest in rehabilitative, vocational or educational programs,
see Moody, 429 U.S. at 88 n.9, Fiallo v. De Batista, 666 F.2d
729, 730 (1st Cir. 1981) and State v. Evans, 127 N.H. 501, 506,
506 A.2d 695, 699 (1985), or prison work assignments, jobs and
wages, see Dupont v. Saunders, 800 F.2d 8, 10 (1st Cir. 1986),
Bulger v. United States Bureau of Prisons, 65 F.3d 48, 50 (5th
Cir. 1995) and Brennan v. Cunningham, 126 N.H. 600, 604, 493 A.2d
1213, 1215 (1985).

Black, Toriz, Chessman, Denis, Desmond, Howlett, Morin, Shaw, J.L. and Thibeault.

To prevail on a retaliation claim, an inmate must show: (1) conduct which led to the alleged retaliation was constitutionally protected; (2) that he suffered some adverse action at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him.  See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  "[I]t is well established that prison officials must provide inmates access to the courts, and prison officials may not harass or retaliate against an inmate for exercising his right of access to the courts."  Penrod v. Zavaras, 94 F.3d 1399, 1404 (10th Cir. 1996)(internal citations omitted).

Here, Pratt alleges that on October 5, 2005, he was transferred from the NHSP to the NCF in retaliation for his prosecution of state court actions and administrative grievances. To the extent the decision to transfer him was made in reprisal for his exercise of constitutionally protected First Amendment freedoms, Pratt may establish a retaliatory transfer claim.  He further alleges that on September 16, 2002 and August 19, 2003, defendants falsified and fabricated disciplinary reports against him (or condoned such actions) in retaliation for the prosecution

27

of state court actions and administrative grievances.  To the
extent the disciplinary charges filed in reprisal for Pratt's
exercise of First Amendment freedoms, he may establish a
retaliation claim.  If true, his allegations may well give rise
to viable First and Fourteenth Amendment retaliation claims
against Curry, Vinson, Cattell, Cunningham, Gardiner, Dunnack,
Kingsbury, Black, Toriz, Chessman, Denis, Desmond, Howlett,
Morin, Shaw, J.L. and Thibeault.

  C. Deprivation of Property

  Pratt alleges that defendants deprived him of personal
property without notice or a hearing in violation of his right to
due process under the Fourteenth Amendment and PPD 1.35
(providing policy, procedure and guidance in presenting a claim
for damages against the NHDOC).  First, he alleges that Curry,
Vinson, Cattell, Cunningham, Morin and Millis deprived him of a
property interest in a 3V AC adapter.  Second, he alleges that
Curry, Vinson, Blaisdell, Cattell, Cunningham, Morin, Millis,
Hill and Van Hoesen deprived him of a Christmas package,
consisting of assorted chocolate and coffee, which he purchased
on December 12, 2004 in the amount of $117.16.

  Even assuming that Pratt possesses a property interest
sufficient to warrant protection under the Due Process Clause, he

fails to state a claim upon which relief may be granted.  "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  Hudson v. Palmer, 468 U.S. 517, 533 (1984); see also Watson v. Caton, 984 F.2d 537, 541 (1st Cir. 1993)(holding that there is no legal basis for a Section 1983 action where the allegation is that the action was derivation from, and not a reflection of, an established state procedure).  Here, Pratt concedes that he has filed a claim with the New Hampshire Board of Claims and a subsequent appeal with the New Hampshire Supreme Court.  New Hampshire therefore affords him an adequate postdeprivation remedy.  Accordingly, I conclude that he  has failed to state a claim upon which relief may be granted and recommend dismissal of the above claims in their entirety.

      D.   Sex Offender Label

      Pratt alleges that throughout the course of his incarceration, Curry, Vinson, Cattell, Blaisdell, Eckert, McCormack, Crompton, Lacasse, Shanahan, Thyng, Van Hoesen, Millis, Withington and Howlett labeled and stigmatized him as a sex offender in violation of his Fourteenth Amendment rights.

Specifically, he alleges that by failing to remove the "sex offender" label from his records, or the requirement that he complete the sex offender program, defendants have labeled and stigmatized him as a sex offender in violation of his liberty interests under the Fourteenth Amendment.  As a result of defendants' acts and omissions, Pratt allegedly has experienced suffering and the denial of parole eligibility, reduced custody, prison employment, recreational programs, work release, educational release and outside work assignments.[8]

Three circuits have held that in certain circumstances, classification as a sex offender during imprisonment implicates a liberty interest and that prisoners must be afforded due process to dispute such a classification.  <u>Chambers v. Colorado Dep't of Corrections</u>, 205 F.3d 1237 (10th Cir. 2000) (the stigma of classification as a sex offender plus the loss of the opportunity to earn the full amount of good time available to other inmates implicated a liberty interest); <u>Kirby v. Siegelman</u>, 195 F.3d 1285 (11th Cir. 1999) (the stigmatizing effect of being classified as a

---

[8]To the extent Pratt challenges the fact of conviction or confinement or the duration of confinement, his claims are cognizable only under the habeas statutes.  <u>See</u> <u>Heck</u>, 512 U.S. at 481; <u>Preiser</u>, 411 U.S. at 498–99.

sex offender constituted a deprivation of liberty under the Due Process Clause); <u>Neal v. Shimoda</u>, 131 F.3d 818 (9th Cir. 1997) (prison regulation that labeled inmates as sex offenders and required completion of a sex offender treatment program as a condition for parole eligibility created liberty interest and some due process protection for prisoners who had not been convicted of sexual misconduct).

In <u>Kirby</u>, a prisoner who had not been convicted of a sex offense was classified as a sex offender while in prison and required to undergo sex offender treatment as a pre-condition to parole eligibility. <u>Kirby</u>, 195 F.3d at 1288. The court concluded that the prisoner had a protected liberty interest in avoiding the sex offender label and the attendant requirement that he complete sex offender treatment. <u>Id.</u> at 1291. The court reasoned that "the stigmatizing effect of being classified as a sex offender constitutes a deprivation of liberty under the Due Process Clause." <u>Id.</u> The court further reasoned "that when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court, a prisoner is entitled to some procedural protections." <u>Id.</u> at 1288 (citing <u>Sandin</u>, 515 U.S. at 484.).

In this action, Pratt filed several request slips in which

31

he requested defendants to remove from his record and classification the "sex offender" label and the requirement that he complete a sex offender program.  The request slips were filed from January 18, 2005 to July 13, 2005 with Curry, Vinson, Cattell, Blaisdell, Eckert, McCormack, Crompton, Lacasse, Shanahan, Thyng, Van Hoesen, Millis, Withington and Howlett. Pratt argued that because the offense for which he was convicted was not a sex offense, he should not be required to participate in the sex offender program.  Pratt claims that defendants failed to adequately respond to his requests by continuing to recommend that he participate in the sex offender program and requiring him to be re-evaluated in order to have the sex offender program recommendation removed from his classification.  See Neal, 131 F.3d at 831.  If true, these allegations may well give rise to a viable Fourteenth Amendment due process claim against all of the above defendants, except Greenwood.  Because the complaint fails to alleged sufficient predicate facts in support of a claim against Greenwood, I recommend dismissal of the claim against him.

   E. Denial of Access to the Courts

  Pratt alleges that Lacasse failed to adequately respond to his inmate request, thereby denying him meaningful access to the

courts in violation of his rights under the First and Fourteenth
Amendments.

"There is a fundamental constitutional right of access to
the courts, founded both in the First Amendment guarantee of
[the] right to petition for redress of grievances, and in the due
process clause which assures that no person will be denied the
opportunity to present to the courts their claims concerning
violations of fundamental constitutional rights." McDuffy v.
Koval, 226 F. Supp. 2d 541, 548 (D. Del. 2002)(citations
omitted).  The right of access to the courts is strongest in the
context of constitutional claims and other civil rights actions.
See BreMiller v. Cleveland Psychiatric Inst., 898 F. Supp. 572,
582 (N.D. Ohio 1995).  To establish a claim for denial of access
to the courts, a plaintiff must show that he was denied access to
the courts and suffered actual injury, such as interference with
his efforts to pursue a claim.  See McDuffy, 226 F. Supp. 2d at
548.

Accepting Pratt's allegations as true, I conclude that he
has failed to allege any relevant actual injury that resulted
from the alleged denial of access to the courts.  While he claims
that Lacasse has failed to adequately respond to his inmate
request slip and inquiry, Pratt has not alleged any ensuing

33

constitutional harm related to the acts or omissions by Lacasse.
Nor has he alleged that any action or inaction by Lacasse has
frustrated or impeded a specific legal claim.  Without
demonstrating that defendant's interference prevented him from
participating meaningfully in the legal process, Pratt fails to
allege any constitutional deprivation.  Accordingly, I recommend
dismissal of this claim in its entirety.

     F.   Denial of Adequate Medical Care

     Pratt alleges that Eppolito, Baker, Crompton, McLeod, Wrenn,
Wolcott, Manzi and Whitaker[9] violated his rights under the Eighth
Amendment by withholding essential and prompt medical care and
denying him certain medical tests.

     To state an Eighth Amendment claim premised on inadequate
medical care, "a prisoner must allege acts or omissions
sufficiently harmful to evidence deliberate indifference to
serious medical needs."  See Estelle, 429 U.S. at 97, 106.
Therefore a prisoner must establish facts from which it can be
inferred that he had a serious medical need (objective component)
and that prison officials were deliberately indifferent to this

---

    [9]Because it is clear that Pratt has failed to state a claim
against Wolcott, Manzi and Whitaker, I decline to address whether
they are state actors within the meaning of Section 1983.

need (subjective component).  Id. at 104.  "A 'serious medical need' is one 'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  See Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 17–18 (1st Cir. 1995)( quoting Gaudreault v. Salem, 923 F.2d 203, 208 (1st Cir. 1990).  Deliberate indifference requires proof that the official knew of and disregarded an excessive risk to the prisoner's serious medical need.  See Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Deliberate indifference may be manifested by prison doctors in their response to the prisoner's needs or by prison personnel "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Estelle, 429 U.S. at 104–05.

The Eighth Amendment does not entitle an inmate to the treatment of his choice.  See Layne v. Vinzant, 657 F.2d 468, 473 (1st Cir. 1981).  "'[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'"  Id. (quoting Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).  Similarly, inadequate medical treatment due to

negligence or even gross negligence does not support an Eighth Amendment violation.  <u>Watson</u>, 984 F.2d at 540.

To the extent Pratt challenges the denial of certain medical tests, I conclude that he has failed to state an Eighth Amendment violation.  He broadly alleges that he was denied appropriate medical treatment when he tested positive for tuberculosis and was only prescribed INH and Vitamin B6 supplements.  In addition, he alleges that Baker improperly ordered a gram stain test and barium swallow test and improperly conducted an electro cardiogram test while he was at rest.  He further alleges that Eppolito denied him tests for AIDS, hepatitis and C-reactive protein.  At most, Pratt's above claims dispute the adequacy of the medical treatment and tests.  Because he has received some medical attention for the symptoms described and disputes the adequacy of the specific tests and treatment provided, I conclude that his claims do not rise to the level of Eighth Amendment violations.  According, I conclude that the above claims, challenging the adequacy of medical tests and treatment, be dismissed in their entirety.

To the extent Pratt alleges that he was denied adequate medical care with regard to his respiratory symptoms, I conclude that he has stated sufficient facts to survive preliminary

36

review.  First, Pratt has described a serious medical condition by stating that he was diagnosed with "possibly early cardiac obstructive pulmonary disease" and "hyperextended lungs." Second, Pratt has demonstrated deliberate indifference with respect to Eppolito, Baker, Crompton and McLeod by alleging that once they had knowledge of his serious medical needs, they nevertheless denied him proper medical care or failed to ensure that he receive proper care.

A report dated November 8, 2005 by Stanley W. Whitaker, M.D. of Androscoggin Hospital confirms that Pratt had "hyperextended lungs on two views that could represent obstructive disease or asthma . . ."  The record reveals that from November 2005 through January 2006, Eppolito and Baker personally met with Pratt and had knowledge of his medical condition but nevertheless denied him proper care.  In a grievance form dated October 24, 2005, Pratt informed Eppolito of his recurring symptoms, including chest pain, sweating, dizziness, lethargy, and requested that certain cardiovascular tests be conducted.  Eppolito advised Pratt that he needed "to go to sick call first and then will be seen if indicated."  In a grievance form dated December 31, 2005 and addressed to the NCF Medical Department, Pratt complained of hyperextended lungs.  Baker responded on January 3, 2006, stating

that Pratt had several tests during November and December 2005, including blood tests, barium swallow and electro cardiogram, all of which were negative.  She further stated that the only exception was Pratt's chest x-ray, which showed "early lung problems."  Baker's explained that his only option to manage his symptoms was an inhaler.  In a grievance form dated  January 6, 2006, Pratt complained to McLeod that Baker's response, and the medical care provided to him, were inadequate.  McCleod responded by arranging for Pratt to be evaluated by Dr. Eppolito on May 9, 2006.  On February 6, 2006, Pratt complained to Crompton that he was denied adequate medical care for a serious medical need, however, Crompton denied his request.

If true, the allegations may demonstrate that defendants' acts and omissions prevented Pratt from receiving prompt and essential medical treatment for a serious medical need. Accordingly, for purposes of preliminary review I find that Pratt has alleged sufficient facts to state an Eighth Amendment denial of adequate medical care claim against Eppolito, Baker, Crompton and McCleod.  Because the complaint fails to alleged sufficient predicate facts in support of a claim against Wrenn, Wolcott, Manzi and Whitaker, I recommend dismissal of the claims against them.

G.   <u>Denial of Right to Privacy</u>

Pratt alleges that Baker and Epollito violated his Fourteenth Amendment right to privacy by disclosing and/or disseminating his private medical information without any legitimate penological reason.  He claims that defendants intentionally returned his confidential medical information, in plain view, through non-medical correctional staff.

Prison inmates do not shed all fundamental protections of the Constitution upon incarceration, but retain those rights that are not inconsistent with their prisoner status or with the legitimate penological objectives of the corrections system. <u>Wolff</u>, 418 U.S. at 555; <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974).  An individual has a constitutional right to privacy which protects "the individual interest in avoiding disclosure of personal matters."  <u>Whalen v. Roe</u>, 429 U.S. 589, 599 (1977).

Although prisoners retain a number of constitutional rights during their incarceration, "it is clear that some rights retained by free citizens are necessarily extinguished by imprisonment." <u>Doe</u> at *5.  The Fourth Amendment right to privacy, which protects individuals against unreasonable searches and seizures, has been deemed to have no applicability in the prison cell search context as such an application would be inconsistent

with incarceration.  <u>Hudson</u>, 468 U.S. at 529.  However, the right

to privacy asserted here, which is a right to privacy in medical

information and medical records, is of an entirely different

nature than the right extinguished in <u>Hudson</u>.  <u>See</u> <u>Doe</u> at *5; <u>see</u>

<u>also</u> <u>Powell v. Schriver</u>, 175 F.3d 107, 112 n.3 (2d Cir. 1999)

(noting right to confidentiality of medical information is

distinct from right of privacy implicated in <u>Hudson</u>); <u>Anderson v.</u>

<u>Romero</u>, 72 F.3d 518, 522 (7th Cir. 1995) (same).

Although the right to privacy in one's medical information

is well established, <u>Doe v. Delie</u>, 2001 WL 817680 at *3 (3d Cir.

July 19, 2001) (citing <u>United States v. Westinghouse Electric</u>

<u>Corp.</u>, 638 F.2d 570, 577 (3d Cir. 1980)), the precise contours of

that right have not been clearly defined in this Circuit.  <u>See</u>

<u>Borucki v. Ryan</u>, 827 F.2d 836, 848 (1st Cir. 1987) (approving an

approach that balances the privacy rights of the individual

seeking to protect information against the governmental interest

in dissemination).  At this stage of the proceedings, however,

Pratt  has alleged the minimal facts necessary to describe the

violation of a privacy interest sufficient to state a claim upon

which relief might be granted.  Although he has not even alleged

that the correctional staff who received his medical information

actually read his files or did anything improper with the

contents, Pratt has alleged the minimum facts necessary –
arbitrary access to private medical information not related to
any legitimate penological objective – to allege a violation of
his right to privacy under the Fourteenth Amendment.  For
purposes of preliminary review, I conclude therefore that he has
stated Fourteenth Amendment claims against Baker and Eppolito.[10]

     H.  <u>Sleep Deprivation</u>

Pratt alleges that Wrenn, Blaisdell, Cox and Crompton have
deprived him of sleep, or condoned such deprivation, in violation
of his Eighth Amendment rights.

While the Constitution "does not mandate comfortable
prisons," <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 (1981), it does
not permit inhumane ones.  <u>Farmer</u>, 511 U.S. at 832.  Under the
Eighth Amendment, prisoners are entitled to adequate shelter,
including the "minimal civilized measure of life's necessities."
<u>Farmer</u>, 511 at 832–34; <u>Rhodes</u>, 452 U.S. at 347–49.  To
successfully allege an Eighth Amendment violation, a plaintiff
must first plead facts which, if true, establish that a
"sufficiently serious" deprivation occurred.  <u>Wilson v. Seiter</u>,
501 U.S. 294, 298–99 (1991).  A plaintiff must show that the

---

    [10]I decline to comment at this point on the possibility of
an available defense based on qualified immunity.

conditions he was forced to endure were beyond the bounds of human decency, and that the prison officers intentionally or recklessly subjected him to those conditions.  See Hudson, 503 U.S. at 9 ("extreme deprivations are required to make out a conditions-of-confinement claim"); Wilson, 501 U.S. at 298-301.

Here, the basis of Pratt's claim is that defendants require him to wake at 5 A.M. for a "stand count" and lock-down at 10:00 P.M., thereby affording him only five to six hours of undisturbed sleep.  In a grievance response dated February 28, 2006, Cox advised Pratt that he is permitted to sleep until 7:30 A.M. and to lock-down as early as 9:00 P.M. and therefore is afforded ten hours of sleep.  Pratt contends, however, that each morning at 5:00 A.M., defendants activate "electromagnetic locks" in rapid succession, thereby creating a loud noise and interrupting his sleep.  He alleges that his sleep is further interrupted by corrections officers announcing breakfast at 5:00 A.M. and other inmates who wake at that time.  As a result of sleep deprivation, Pratt allegedly suffers from tinnitus, fatigue, mood disorders, decline in productivity and "accelerated deterioration in health."

While courts have recognized that sleep constitutes a basic human need, see Keenan v. Hall, 83 F.3d 1083, 1090-91 (9th Cir.

1996) (Eighth Amendment claim where inmate subjected to bright light for 24 hours per day and alleged to have suffered grave sleeping problems and psychological harm), I conclude that Pratt has failed to allege sufficient facts to state a cognizable claim.  His allegations of sleep deprivation "are not sufficient to show that he is exposed to a risk that is so grave that it violates contemporary standards of decency."  Helling v. McKinney, 509 U.S. 25, 36 (1993).  A condition of confinement that affords five to six hours of undisturbed sleep, and possibly ten hours of sleep, does not rise to the level of cruel and unusual punishment under the Eighth Amendment.  Nor are the resulting mental and physical problems described by Pratt sufficiently severe to rise to constitute an Eighth Amendment violation.  Accordingly, I recommend that this claim be dismissed in its entirety.

IV.  Supervisory Liability

    Construed liberally, the complaint names Curry, Wrenn, Vinson, Blaisdell, Cattell and Crompton in their supervisory capacities.  Each defendant allegedly condoned the acts and omissions by subordinate officers that resulted in the above cognizable constitutional violations.  Defendants further ignored or denied Pratt's grievances and failed to adequately investigate

and remedy the alleged constitutional deprivations.

In a Section 1983 action, "supervisory liability cannot be predicated on a respondeat superior theory." Whitfield v. Melendez–Rivera, 431 F.3d 1, 14 (1st Cir. 2005) (citing Barreto–Rivera v. Medina–Vargas, 168 F.3d 42, 48 (1st Cir. 1999)). Rather, supervisors may only be held liable on the basis of their own acts or omissions. Id. "Supervisory liability can be grounded on either the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization." Id. (citing Camilo–Robles v. Zapata, 175 F.3d 41, 43–44 (1st Cir. 1999)). Absent direct participation, a supervisor may only be held liable where the behavior of his subordinates results in a constitutional violation and the supervisor's acts or omissions were affirmatively linked to the behavior to the extent that it "could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence . . . amounting to deliberate indifference.'" Id., (quoting Hegarty v. Somerset County, 53 F.3d 1367, 1379–80 (1st Cir. 1995)).

Here, the complaint alleges that defendants failed to adequately train, supervise and discipline their subordinate officers with regard to the Eighth and Fourteenth Amendment

violations at issue.  Because defendants reviewed and responded
to the grievances submitted by Pratt, they clearly had knowledge
of the alleged constitutional deprivations.  While the record
suggests that the defendants responded to the inmate request
slips, Pratt contends that the their responses were inadequate
and failed to resolve the constitutional deprivations.  He
maintains that defendants should have acted to prevent the
continuing deprivations of his constitutional rights.
Accordingly, I find that Pratt has stated the minimum facts
necessary to state a claim for supervisory liability against
Curry, Vinson, Blaisdell, Cattell and Crompton.  Because the
complaint fails to provide sufficient predicate facts in support
of a claim against Wrenn, I recommend dismissal of the claim
against him.

V.  <u>Official Capacity</u>

       Construed liberally, the complaint seeks declaratory,
injunctive and monetary relief for wrongs committed by the
defendants as state actors in their official capacities.  It is
well-settled that the Eleventh Amendment bars suits against state
entities and state agents working in their official capacities
unless the state has expressly waived immunity, which has not
been done by New Hampshire for actions brought under Section

45

1983.  See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)(holding that neither a state nor its officials acting in their official capacities are "persons" under Section 1983).  Official capacity suits against officers of an agency are simply "another way of pleading an action against an entity of which an officer is an agent."  Monell, 436 U.S. at 690 n.55.  To the extent Pratt brings official capacity claims for monetary relief against the defendants, all of whom are officials or employees of the NHDOC, NHSP, NCF or Parole Board, I recommend that those claims be dismissed.

On the other hand, official capacity actions against state actors for prospective injunctive relief are not treated as actions against the state and may be considered under Section 1983.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10 (1989); Ex parte Young, 209 U.S. 123, 159-60 (1908).  Thus, Pratt is not barred from bringing claims for prospective injunctive relief against the defendants in their official capacities.

VI.  <u>State Law Claims</u>

The complaint alleges state law claims for libel, slander, defamation, intentional and negligent infliction of emotional distress and various claims of negligence.  To the extent the state law claims are so related that they appear to form part of the "same case or controversy" of Pratt's viable federal claims under the Fourteenth Amendment, I conclude that this Court may exercise supplemental jurisdiction over the state law claims. <u>See</u> 28 U.S.C. § 1367(a) (providing for supplemental jurisdiction over claims that are so related they form part of the same case or controversy).  Pratt further alleges state law claims of assault, battery and false imprisonment.  Because such claims are lacking in sufficient predicate facts as to the named defendants and/or are unrelated to Pratt's federal claims, I recommend they be dismissed.

<u>Conclusion</u>

For the reasons stated above, I conclude that Pratt has alleged the following claims: (1) Fourteenth Amendment due process claims, arising from his disciplinary proceedings, against Curry, Vinson, Cattell, Cunningham, Gardiner, Dunnack, Kingsbury, Black, Toriz, Chessman, Denis, Desmond, Howlett, Morin, Shaw, J.L. and Thibeault; (2) First and Fourteenth

47

Amendment retaliation claims against Curry, Vinson, Cattell, Cunningham, Gardiner, Dunnack, Kingsbury, Black, Toriz, Chessman, Denis, Desmond, Howlett, Morin, Shaw, J.L. and Thibeault ; (3) Fourteenth Amendment due process claims, arising from his classification as a "sex offender," against Curry, Wrenn, Vinson, Cattell, Blaisdell, Eckert, McCormack, Crompton, Lacasse, Shanahan, Thyng, Van Hoesen, Millis, Withington and Howlett; (4) Eighth Amendment denial of adequate medical care claims against Eppolito, Baker, Crompton and McLeod; (5) Fourteenth Amendment right to privacy claims, arising from the disclosure or dissemination of confidential medical information, against Baker and Eppolito; and (6) supervisory liability claims against Curry, Vinson, Blaisdell, Cattell and Crompton.  I further recommend that this Court exercise jurisdiction over Pratt's related supplemental state law claims.  I recommend dismissal of all remaining claims.

If this recommendation is approved, the claims as identified in this report and recommendation, will be considered for all purposes to be the claims raised in the complaint.  If the plaintiff disagrees with the identification of the claims herein, plaintiff must do so by filing an objection within ten (10) days of receipt of this report and recommendation, or by properly

48

moving to amend the complaint.

Any further objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); Unauthorized Practice of Law Committee v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date: March 31, 2006
cc:   Harvey Pratt, *pro se*

49