# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF NEW HAMPSHIRE

<u>Harvey Pratt</u>

    v.                                          Civil No. 05-cv-367-SM

<u>Stephen Curry, Commissioner,</u>
<u>New Hampshire Dept. of Corrections,</u>
<u>et al.</u>

## **REPORT AND RECOMMENDATION**

Pro se plaintiff Harvey Pratt ("Pratt") moved for a preliminary injunction in this action brought pursuant to 42 U.S.C. § 1983, which was referred to me for review. <u>See</u> 28 U.S.C. § 636(b)(1)(B). An evidentiary hearing was held on September 15, 2006. After careful consideration of the arguments and evidence presented, I conclude that Pratt has failed to meet the criteria justifying a preliminary injunction and, therefore, recommend that his motions (doc. nos. 36 and 37) be denied.

<u>Analysis</u>

**1. Background**

Pratt is incarcerated at the New Hampshire Department of Corrections' Northern Correctional Facility ("NCF"), in Berlin,

New Hampshire, pursuant to a conviction in November 2001 on charges of "Interference with Custody." See N.H. Rev. Stat. Ann. 633:4 (I) (2005). He was originally held at the New Hampshire State Prison ("NHSP") in Concord, before his transfer to NCF in October 2005[1]. He brought this § 1983 action shortly after the transfer, to challenge several conditions of his confinement at both facilities. The complaint described nine incidents that allegedly demonstrate unconstitutional treatment, in violation of his First, Eighth and Fourteenth Amendment rights.

After a preliminary review of his § 1983 complaint, this court determined Pratt had stated the following claims:

> (1) Fourteenth Amendment due process claims, arising from his disciplinary proceedings, against Curry, Vinson, Cattell, Cunningham, Gardiner, Dunnack, Kingsbury, Black, Toriz, Chessman, Denis, Desmond, Howlett, Morin, Shaw, J.L. and Thibeault;
>
> (2) First and Fourteenth Amendment retaliation claims against Curry, Vinson, Cattell, Cunningham, Gardiner, Dunnack, Kingsbury, Black, Toriz, Chessman, Denis, Desmond, Howlett, Morin, Shaw, J.L. and Thibeault;
>
> (3) Fourteenth Amendment due process claims, arising from his classification as a "sex offender," against Curry, Wrenn, Vinson, Cattell, Blaisdell, Eckert, McCormack, Crompton, Lacasse, Shanahan, Thyng, Van Hoesen, Millis, Withington and Howlett;

---

[1] The record is inconsistent about whether Pratt was transferred to NCF in October 2004 or 2005; however, the transfer date is irrelevant to my disposition of the pending motions.

>      (4) Eighth Amendment denial of adequate medical care
> claims against Eppolito, Baker, Crompton and McLeod;
>
>      (5) Fourteenth Amendment right to privacy claims,
> arising from the disclosure or dissemination of
> confidential medical information, against Baker and
> Eppolito; and
>
>      (6) supervisory liability claims against Curry,
> Vinson, Blaisdell, Cattell and Crompton.

See Order, Pratt v. NH Dept. of Corr., No. 05-cv-367-SM (D.N.H. Mar. 31, 2006).[2] Accordingly, the complaint was served on those defendants.

Pratt then filed the two motions for preliminary injunctive relief which are currently before the court. Pratt also filed an affidavit in support of his motions. Taken together, these three documents assert the following claims:

>      1) his parole is still conditioned upon
> completion of the sexual offender program ("SOP"),
> and his placement and treatment within the prison
> are affected by the recommendation that he
> participate in the SOP;
>
>      2) some of his records still incorrectly
> list his crime as "kidnaping," in retaliation for
> Pratt seeking administrative and judicial relief;
>
>      3) defendants provide inadequate recreation;
>
>      4) defendants provide inadequate library services;

---

[2]The court also concluded Pratt has stated certain state law claims over which it would exercise supplemental jurisdiction.

3

> 5) his medical records have been disclosed, yet defendants have withheld information necessary to a "diagnosis of a major calamity";
>
> 6) he has been punished and "warehoused" at NCF;
>
> 7) heat and shower temperature are improper.
>
> 8) he is served unhealthy food;
>
> 9) he is offered no job "worthy" of him;
>
> 10) he is subject to excessive noise, particularly at 5:00 a.m., which deprives him of sleep;
>
> 11) he is subject to sand flies and mosquitoes in the recreational yard;
>
> 12) the running track is sandy, dusty, and full of potholes and rocks, which inmates use as weapons;
>
> 13) the prison makes improper use of disciplinary infractions;
>
> 14) he has not received a response to a grievance;
>
> 15) defendants attempt to incite rioting by manipulating food and canteen privileges;
>
> 16) defendants engage in punitive totalitarianism, as evidenced by the prison's response to Pratt's "Inmate Request Slips" appended to his affidavit in support of the preliminary injunction.

Pratt testified at the evidentiary hearing in support of the preliminary injunctions, describing in detail the items outlined in his motions. As part of his evidence, he submitted a handwritten list of additional grievances which provided further

4

examples of the conditions at NCF.  He did not otherwise provide any evidence in support of his motions.

Defendants called two witnesses who testified regarding Pratt's classification within the Department of Corrections and about the challenged conditions at NCF.  This testimony, which I find to be credible, clarified that Pratt's offender record in fact has been amended to remove any reference to "kidnaping"; however, the recommendation that he participate in the sexual offender program before he would be eligible for parole consideration was retained, at the request of the Parole Board.  The testimony also contradicted most of the problems Pratt alleged regarding the conditions at NCF.

**2. Preliminary Injunction Standard**

A preliminary injunction is extraordinary relief, available only when the court determines that, without it, a meaningful resolution of the dispute after full adjudication of the matter would not be possible.  Such a situation arises when some harm from the challenged conduct could not be adequately redressed with traditional legal or equitable remedies following a trial. See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18 (1st Cir. 1996) (finding irreparable harm where legal remedies

are inadequate); see also Acierno v. New Castle County, 40 F.3d 645, 653 (3rd Cir. 1994)(explaining irreparable harm and its effect on the contours of preliminary injunctive relief)[3]. Absent irreparable harm, there is no need for a preliminary injunction.

It is said that the purpose of a preliminary injunction is to "preserve the 'status quo' . . . to permit the court more effectively to remedy discerned wrongs." CMM Cable Rep., Inc. v. Ocean Coast Prop., Inc., 48 F.3d 618, 620 (1st Cir. 1995). The "status quo," however, is not necessarily the situation existing at the time suit was filed, but rather refers to a balance between the parties that will enable the court to render a meaningful decision upon complete adjudication of the dispute. See e.g. id. at 620-21 (discussing need for interlocutory appeal of injunction orders to protect a litigant who "might triumph at trial but be left holding an empty bag"); see also Becton v. Thomas, 48 F. Supp. 2d 747, 753 (W.D. Tenn. 1999) (discussing authority to justify reinstatement of plaintiff to preserve the

---

[3] "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Acierno, 40 F.3d at 653.

court's ability to issue a meaningful decision).

> It must not be thought, however, that there is any particular magic in the phrase "status quo." The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits. If [sic] often happens that this purpose is furthered by preservation of the status quo, but not always. If the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury.

Id. (quoting Stenberg v. Cheker Oil Co., 573 F.2d 921, 925 (6th Cir. 1978)(emphasis and citations omitted)). The court's focus, therefore, must always be on the underlying merits of the case, and what needs to be done to ensure that that dispute can be meaningfully resolved.

A preliminary injunction cannot issue unless the moving party satisfies four factors which establish its need for such relief. See Esso Standard Oil Co. (Puerto Rico) v. Monroig-Zavas, 445 F.3d 13, 17–18 (1st Cir. 2006) (discussing the requisite showing to obtain a preliminary injunction); see also Ross-Simons of Warwick, Inc., 102 F.3d at 18–19 (explaining the

7

burden of proof for a preliminary injunction).  Those factors are:  "(1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." Esso Standard Oil Co., 445 F.3d at 18.

In the First Circuit, only if plaintiff is able to show a likelihood of success on the merits does the court consider the remaining factors.  See id. (the "sine qua non of the four-part inquiry is likelihood of success on the merits").  Yet, while this first prong has been described as the "main bearing wall" of the framework, Ross-Simons of Warwick, Inc., 102 F.3d at 16, it works in tandem with the need to show irreparable harm.  See id. at 19 ("the predicted harm and the likelihood of success on the merits must be juxtaposed and weighed in tandem").  If plaintiff is unlikely to succeed on the merits, then the need to prevent irreparable harm diminishes, because the purpose of preventing that harm is to enable the court to render a meaningful decision upon full adjudication of the matter.  See id. (citing authority

8

to discuss the interrelationship between the two prongs in determining the need for preliminary injunctive relief); see also Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, (1st Cir. 1991) (finding no irreparable harm even though real property involved because plaintiffs unlikely to succeed on their claim to ownership of land). "If the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." Esso Standard Oil Co. (Puerto Rico), 445 F.3d at 18.

3. **Pratt's Motions for Preliminary Injunctions**

Applying this standard of review to Pratt's motions for preliminary injunctive relief, the record readily supports the conclusion that he has failed to make the requisite showing of likelihood of success on the merits or the immediate risk of irreparable harm. Nothing in the record persuades me that a preliminary injunction is necessary at this juncture to protect Pratt's rights pending final determination of his § 1983 suit.

Pratt failed to demonstrate how any of the things about which he was complaining supported the claims in his underlying § 1983 action. He offered no written or oral evidence or argument in support of his claims for: (1) Fourteenth Amendment violations

of his due process rights based on disciplinary proceedings, (2) First and Fourteenth Amendment violations of his right to access the court based on retaliatory treatment, (3) Eighth Amendment violation of his right to adequate medical care, (4) Fourteenth Amendment violation of his right to privacy claim based on disclosure of confidential medical information[4], and (5) his supervisory liability claim. Without any evidence suggesting that those alleged violations in fact have occurred, I cannot find that he is likely to succeed on the merits of his underlying case. Further, unless Pratt shows he has exhausted his administrative remedies for these alleged violations, his § 1983 claims will fail. See 42 U.S.C.A. § 1997e(a)(2003) (requiring exhaustion of administrative remedies before a prisoner can bring a § 1983 suit challenging the conditions of confinement). Pratt also did not offer any evidence that his claims have been administratively exhausted.

---

[4]Pratt made one statement that his medical records were seen by an unauthorized official, but that statement was undermined by the state's explanation that the movement of the files was done pursuant to standard prison policy and by Pratt's failure to adduce any evidence to show how he was damaged by this alleged violation of his right to privacy. See Borucki v. Ryan, 827 F.2d 836, 841-42 (1st Cir. 1987) (discussing vague parameters of constitutional right to privacy with respect to a prisoner's confidential medical records).

The remaining § 1983 claim asserts a Fourteenth Amendment due process violation based on Pratt's classification as a sexual offender. This issue was of paramount concern to Pratt at the hearing. Both in his motion and at the hearing he argued to have his official records changed to reflect accurately his conviction, which does not have any "sexual offender" element. He argued that he has been subjected to mistreatment because of that erroneous reference in his record, both by inmates who abuse sexual offenders and by the prison staff, who have denied him housing and parole privileges because of that label. The record does not substantiate Pratt's claims. I find he has failed to make the requisite showing to justify a preliminary injunction based on this claim for several reasons.

First, there was uncontradicted evidence that Pratt's classification records have been corrected to accurately reflect the charges on which he was convicted and to remove any reference to him as a sexual offender. Accordingly, his request for an injunction to have his records changed is moot.

Second, Pratt is unlikely to succeed on the merits of his claim that he has been "labeled" a sexual offender in violation of his due process rights. Pratt seemed to be seeking to have

11

this "label" removed from his record.  Pratt stated he will not participate in the sexual offender program because he was not convicted of a sexual offense.  Pratt suggested the state's requirement that he participate in the SOP prior to being considered for parole violated his due process rights; however, Pratt has no constitutional right to parole, <u>Greenholtz v. Neb. Penal Inmates</u>, 442 U.S. 1, 7 (1979), because parole is a privilege under New Hampshire law.  <u>See</u> <u>Brooker v. Warden</u>, No. 98-466-JD, 1999 WL 813893, at *2 (D.N.H. June 22, 1999).  Pratt's complaint that the SOP participation requirement somehow affected his placement also does not give rise to a § 1983 claim, because he does not have any constitutional right to a particular custody or security status.  <u>See</u> <u>id.</u> at * 2 fn. 3 (citing <u>Moody v. Daggett</u>, 429 U.S. 78, 88 n.9 (1979)).

Third, to the extent Pratt suggested that the sexual offender label has subjected him to cruel and unusual punishment in violation of the Eighth Amendment, he failed to adduce evidence which supported his claim of abusive treatment by other inmates.  Moreover, he has not sought to amend his complaint to add an Eighth Amendment violation based on these allegations.  Since Pratt is unlikely to succeed on any claim for a

constitutional violation based on the SOP participation recommendation in his file, and because he has not demonstrated how that requirement is causing him irreparable harm, he has not justified his request for a preliminary injunction to have that "label" removed from his record.

The remainder of Pratt's two motions for preliminary injunction sought relief from a myriad of unpleasant conditions of his confinement. Both his written submissions and oral testimony provided detailed anecdotal testimony about the uncomfortable conditions at NCF. None of this evidence, however, supports any of the underlying claims in this § 1983 action or demonstrates a likelihood of Pratt's success therein. Nearly all of his charges were contradicted by the state's witness, and none of it demonstrated any risk of irreparable harm to Pratt. As a prisoner, incarcerated following conviction on criminal charges, Pratt is not entitled to anything more than those minimal conditions that do not offend contemporary standards of decency. Pratt has misunderstood the purpose of a preliminary injunction. He cannot use it as a springboard to launch before the court any and all grievances he may have about his incarceration. Rather, he has the burden of demonstrating an imminent risk of

irreparable harm which would prevent him from obtaining a meaningful disposition of the underlying matter. His complaints about the conditions at NCF add nothing to this showing.

## Conclusion

For the reasons set forth above, I recommend that Pratt's motions for preliminary injunction (doc. nos. 36 and 37) be denied. Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); see also Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

/s/ James R. Muirhead
James R. Muirhead
United States Magistrate Judge

Date: September 25, 2006

cc: Andrew B. Livernois, Esq.
Harvey Pratt, *pro se*