UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Harvey Pratt,
    Plaintiff

    v.                                  Civil No. 05–cv–367–SM
                                          Opinion No. 2007 DNH 136

N.H. Dep't of Corrections, et al.,
    Defendants

# O R D E R

Pro se plaintiff, Harvey Pratt, is a former inmate at the New Hampshire State prison.  He brings this action against the New Hampshire Department of Corrections (the "DOC") and more than 30 individuals (most of whom are DOC employees).  After reviewing Pratt's complaint, the Magistrate Judge concluded that it set forth six viable federal claims, as well as state law claims for libel, slander, defamation, and negligence.  Those federal claims are: (1) Fourteenth Amendment due process claims arising from Pratt's disciplinary proceedings; (2) First and Fourteenth Amendment retaliation claims; (3) Fourteenth Amendment due process claims arising from Pratt's classification as a "sex offender;" (4) an Eighth Amendment claim for denial of adequate medical care; (5) a Fourteenth Amendment right to privacy claim arising out of the alleged disclosure of Pratt's confidential

medical information; and (6) a supervisory liability claim
against five of the defendants.  Report and Recommendation
(document no. 10), 2006 WL 995121 (D.N.H. March 31, 2006) (the
"Report and Recommendation").

Subsequently, Pratt filed an amended complaint, but it does
not appear to set forth any additional viable claims.  Defendants
have organized their motion for summary judgment in a manner that
is consistent with the Magistrate Judge's original construction
of plaintiff's claims, addressing each of the viable federal
causes of action identified in the Report and Recommendation.
Pratt objects to defendants' motion, but does not suggest that
his amended complaint advances any new causes of action.

For the reasons set forth below, defendants' motion is
granted.

## Standard of Review

When ruling on a party's motion for summary judgment, the
court must "view the entire record in the light most hospitable
to the party opposing summary judgment, indulging all reasonable
inferences in that party's favor."  Griggs-Ryan v. Smith, 904
F.2d 112, 115 (1st Cir. 1990).  Summary judgment is appropriate

when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine dispute as to a material fact has been proved, and "summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted). The key, then, to defeating a properly supported motion for summary judgment is the non-movant's ability to support his or her claims concerning disputed material facts with evidence that conflicts with that proffered by the moving party. See generally Fed. R. Civ. P. 56(e). It naturally follows that while a reviewing court must take into account all properly documented facts, it may ignore bald assertions, unsupported conclusions, and mere speculation. See, e.g., Serapion v. Martinez, 119 F.3d 982, 987 (1st Cir. 1997).

**Background**

I.  <u>Pratt's Underlying Criminal Conviction</u>.

Because Pratt challenges numerous aspects of his underlying

criminal conviction, and because some of his federal claims arise

out of his assertion that prison officials improperly "labeled"

him as a "sexual offender," it is probably appropriate to briefly

outline the facts and circumstances surrounding his conviction.

Those facts were disclosed in Pratt's earlier petition for habeas

corpus relief.  The court (DiClerico, J.) there provided the

following summary:

> Pratt met Jamie B[.] through the Internet.  Jamie said
> that she was sixteen, when she was actually fourteen,
> and Pratt was thirty-three.  Pratt lived in Quincy,
> Massachusetts, and Jamie lived with her father and
> step-mother in Londonderry, New Hampshire.
>
> On February 10, 2000, Jamie called Pratt and told him
> she wanted to leave home and live with him.  Pratt told
> her to get as far from home as possible and that he
> would pick her up.  Jamie hitchhiked from her home to
> the Mall of New Hampshire in Manchester.  Pratt drove
> to Manchester and picked Jamie up at a K-Mart near the Mall.
>
> Pratt drove Jamie to his apartment in Quincy.  Jamie
> testified that Pratt gave her money, kissed her,
> discussed having sex with her, gave her beer and
> offered her other alcohol, and told her to tell his
> roommate and anyone else at the apartment that she was
> eighteen.  He also offered Jamie his telephone to call
> home, but Jamie did not use it.  When Jamie's father
> found she was missing, he contacted police.  With
> information from Jamie's step-sister, the police found
> Jamie at Pratt's apartment.  Jamie's father drove to
> Quincy to pick her up and provided her computer to the

police who sent it to the Federal Bureau of
Investigation for analysis.

Pratt was indicted in September of 2000 on one count of
interference with custody.  He was tried and found
guilty on August 14-15, 2001.  Pratt appealed on the
ground that the evidence was insufficient to support
his conviction.  The New Hampshire Supreme Court
affirmed his conviction without a published decision.
Pratt then filed pro se motions to amend his sentence,
for a new trial, and to quash the indictment.  Counsel
were appointed to represent Pratt on the motions to
amend sentence and for a new trial, and the motion to
amend sentence was granted on appeal.  After a hearing,
Pratt was resentenced, but his motions for a new trial
and to quash the indictment were denied.  The supreme
court declined Pratt's appeals.

Pratt v. Warden, Northern N.H. Correctional Facility, 2006 WL

1425963 at *1 (D.N.H. May 23, 2006) (footnote omitted).


II.  Classifying Pratt as a "Sexual Offender."

When he filed this action, Pratt was serving a sentence of

two to six years in state prison.  His original sentence provided

that, as a condition of his eligibility for parole, Pratt was

required to participate in the prison's sexual offender program.

It also provided that he must participate in any other programs

prison officials deemed necessary or appropriate (though not

necessarily as a condition of parole eligibility).  Upon entering

prison, Pratt was interviewed to determine whether he would

benefit from the sexual offender program.  Based upon a review

of, among other things, his crime of conviction and the
circumstances surrounding that conviction, prison officials
concluded that he was an appropriate candidate for the program
(despite the fact that he minimized his criminal conduct and was
not amenable to treatment).

Subsequently, Pratt appealed his sentence and prevailed in
having the court remove the requirement that he participate in
the sexual offender program as a condition of his eligibility for
parole.  All other aspects of his sentence, including the
requirement that he participate in programming recommended by the
DOC, remained the same.  Although Pratt's amended sentence did
not specifically require him to participate in the sexual
offender program, DOC staff continued to recommend that he do so.
Neither the DOC nor prison staff could, however, force Pratt to
participate.

Pratt alleges that DOC staff "classified" him as a "sexual
offender" which, in turn, caused him to suffer numerous hardships
during his incarceration.  Among other things, the DOC's alleged
classification of him as a sexual offender gives rise to Pratt's
claims of defamation, libel, and slander.  The DOC, on the other
hand, says it does not label or classify inmates as "sexual

offenders," and, during the course of his incarceration, Pratt
was classified as a C-3 or medium custody inmate.  Although Pratt
repeatedly requested DOC officials to remove from his file the
recommendation that he participate in the sexual offender
program, officials informed him that they would continue to make
that recommendation until he was re-evaluated by the director of
the sexual offender program.  But Pratt repeatedly refused to
submit to such an evaluation.

In short, Pratt claims that because New Hampshire law does
not require him to register as a convicted sexual offender, <u>see</u>
N.H. Rev. Stat. Ann. ("RSA") 651-B:1, I and V, prison officials
stigmatized him by recommending that he participate in the
prison's sexual offender program and, in the process, violated
his Fourteenth Amendment rights.

III. <u>Disciplinary Charges</u>.

The various disciplinary incidents giving rise to Pratt's
claims are described in detail in the Report and Recommendation
and need not be recounted.  <u>See</u> <u>id</u>. at 4-17.

IV.  Transfer to Berlin.

     In October of 2004, Pratt was transferred from the State
Prison in Concord, New Hampshire, to the state's Northern
Correctional Facility in Berlin, New Hampshire.  Pratt claims he
was transferred in retaliation for having engaged in protected
conduct (that is, either filing grievances within the prison
system or pursuing litigation against various DOC staff).  DOC
officials, however, deny that Pratt's transfer was retaliatory in
nature.  Although she does not know exactly why Pratt was
transferred, Kimberly Lacasse, the DOC's Director of
Classifications, testified that she believes it was because Pratt
was not participating in any prison programming and officials
wanted to free up bed space so other inmates (i.e., those who
wished to participate in such programming) could be moved to
Concord.  Lacasse affidavit (document no. 139-3) at para. 12.
She is, however, confident that Pratt was not moved in
retaliation for his litigation activities and testified that she
did not believe that she was even aware of Pratt's litigation
activities when the transfer decision was made.  Id.


V.   Medical Treatment.

     When Pratt was initially held at the Rockingham County Jail
in 2001, he tested positive for tuberculosis.  When he was turned

over to the custody of the state prison, however, he refused any additional testing for tuberculosis. Accordingly, the medical staff ordered a chest x-ray, which was negative. At various other points in time, Pratt came into contact with the medical staff, complaining of various respiratory ailments. Those contacts, as well as the treatment provided and diagnostic testing ordered, are described in the affidavit of Judy Baker, a Nurse Practitioner at the Northern Correctional Facility. Exhibit K to defendants' memorandum (document no. 139-13). <u>See also</u> Report and Recommendation at 36-38.

Pratt claims the medical treatment he received was so deficient as to violate the Eighth Amendment's prohibition against cruel and unusual punishment. He also claims that Dr. Eppolito, a physician who provided Pratt with medical care, violated his privacy rights. Specifically, Pratt says he sent a request slip to Dr. Eppolito, in a sealed envelope marked "confidential," seeking tests for HIV and tuberculosis. He claims Dr. Eppolito violated his privacy rights when he responded to that request using the regular prison mail, without using a sealed envelope.

**Discussion**

I.   <u>Pratt's Classification</u>.

Much of Pratt's objection to summary judgment is devoted to an attack upon his underlying conviction.  <u>See</u> Plaintiff's objection (document no. 146) at 1–2, 6–11.  <u>See also</u> Exhibits 1–4.  Among other things, Pratt claims the statute under which he was convicted was improperly applied to his case, and asserts that the evidence introduced at trial was insufficient to sustain a conviction.  Such claims are, however, inappropriate in the context of a 1983 suit.  As Pratt well knows, any challenge to his underlying state conviction must be raised in the context of a habeas petition.  In fact, Pratt already (unsuccessfully) pursued both his state and federal habeas remedies.  He cannot attempt to relitigate those claims in the context of this case.

A.   <u>Pratt's Constitutional Rights were not Violated</u>.

Pratt's claim that, despite his success in having his original sentence modified, prison officials unlawfully continued to recommend his participation in the sexual offender program fares no better.  In short, Pratt contends that because, upon his release from prison, New Hampshire law does not require him to register as a convicted sexual offender, and because his amended sentence did not require participation in the sexual offender

program, prison officials may not even recommend that he
participate in that program.

Pratt is correct in asserting that his amended sentence
removed the requirement that he successfully complete the sexual
offender program as a prerequisite to parole eligibility. See
Exhibit C to defendants' memorandum, Amended Sentence (document
no. 139-5) ("The Sentencing Order dated November 21, 2001 is
amended to delete the recommendation to the Department of
Corrections of the Sexual Offender Program [and] the deletion of
the requirement that completion of that program be a condition of
parole.")  Nevertheless, the sentencing court maintained the
requirement that Pratt meaningfully participate in any
programming or training recommended by the DOC.  Id. ("The
defendant is to participate meaningfully and complete any
counseling, treatment and educational programs as directed by the
correctional authority or Probation/Parole Officer.").  Given the
circumstances surrounding his conviction and the record before
the court, there is no evidence that prison officials'
recommendation that he participate in the sexual offender program
was irrational or unreasonable in any way.  Moreover, even though
staff recommended that Pratt participate in the program, he was

not forced to do so, nor was he punished or deprived of any
protected liberty interests for having failed to do so.

       To the extent Pratt claims his due process rights were

violated because his refusal to participate in the sexual

offender program adversely affected his eligibility for parole,

or the prison unit in which he was housed, it is well established

that inmates do not have a protected liberty interest in parole,

classification status, or housing status.  See, e.g., Wellington

v. Comm'r of Corrections, No. 96-189-M (D.N.H. Dec. 30, 1996)

("First, it is clearly established that Wellington has no

constitutionally protected liberty interest in being paroled.

Under New Hampshire law, parole is a matter of discretion rather

than a matter of right.  Neither the New Hampshire parole

statute, N.H. RSA 651-A, nor the regulations promulgated pursuant

to that statute mandate a prisoner's release upon proof of

certain ascertainable facts.") (citations and internal

punctuation omitted).  See also Report and Recommendation at 26

n.7 ("Under federal and state law, Pratt has no protected liberty

interest in parole, or custodial classification.  Nor does he

have a protected liberty interest in rehabilitative, vocational

or educational programs, or prison work assignments, jobs and

wages.")(citations omitted).

Of course, as the Magistrate Judge recognized in his Report and Recommendation, some courts have concluded that there are certain circumstances under which inmates must be afforded due process protections before a state labels them as "sexual offenders" and compels them to participate in sexual offender programs and/or register as sexual offenders. See id. at 29-32 (citing Chambers v. Colorado Dep't of Corrections, 205 F.3d 1237 (10th Cir. 2000); Kirby v. Siegelman, 195 F.3d 1285 (11th Cir. 1999); Neal v. Shimoda, 131 F.3d 818 (9th Cir. 1997)). This is not such a case.

First, as Pratt concedes, DOC officials offered to drop the recommendation that he participate in the sexual offender program if, upon reevaluation by the program's director, it was found that he was unlikely to benefit from the program. Whatever due process protections the State (through the DOC) owed to Pratt, presumably the first was to subject him to a psychological evaluation before determining whether he was an appropriate candidate for the sexual offender program. The DOC offered to do just that. Pratt refused. See Report and Recommendation at 32. Yet, at the same time, he maintains that his due process rights were violated. Plainly, Pratt cannot refuse the process afforded

to him and, simultaneously pursue a claim that he has been denied due process.[1]

In light of his response to the DOC's proposal to subject him to a second evaluation, it is difficult to discern the precise nature of Pratt's constitutional claim. He seems to believe that, regardless of any deviant sexual predilections he may have exhibited, because he was not convicted of a "sexual offense," the DOC could not, as a matter of law, recommend that he participate in the sexual offender program. Accordingly, he seems to believe that DOC officials were obligated to acquiesce when he filed various request slips and grievances asking them to remove that recommendation from his file. He has, however, failed to point to any authority supportive of such a broad proposition of law.

Unlike some of the cases in which courts have recognized that inmates' protected liberty interests may be implicated when they are labeled as "sexual offenders," Pratt's refusal to

---

[1]     The record does not reveal what remedies were available to Pratt if he had submitted to the re-evaluation and was dissatisfied with the outcome. Presumably, the prison's regulations governing inmate grievances would have allowed him to challenge such a decision and obtain a hearing on the matter. But, neither Pratt nor the defendants discuss that issue.

participate in the sexual offender program has not caused him to
lose any accrued good time credits.  Nor has it rendered him
"completely ineligible for parole."  See <u>Neal</u>, 131 F.3d at 829
("[B]ecause the State's regulations render the inmate <u>completely</u>
<u>ineligible</u> for parole if the treatment program is not
satisfactorily completed, the attachment of the 'sex offender'
label to the targeted inmate has a practical and inevitable
coercive effect on the inmate's conduct.") (emphasis in
original).  Consequently, it is difficult to see precisely what
protected liberty interest was adversely affected by the DOC's
recommendation that he participate in the sexual offender
program.

     B.    <u>Qualified Immunity</u>.

     Even if the DOC did violate Pratt's constitutionally
protected liberty interest(s) by recommending that he participate
in the sexual offender program without first affording him due
process protections, defendants would plainly be entitled to
qualified immunity.

     What makes Pratt's case somewhat unusual is that New
Hampshire law does not, by virtue of his underlying crime of
conviction, define him as a "sexual offender" or "offender

against children." <u>See</u> RSA 651-B:1, III and V.  If he had been

convicted of a crime that state law defines as a sexual offense,

he would, of course, have no due process claim.

> [I]t is clear that [plaintiff] received all of the
> process to which he was due.  [Plaintiff] was convicted
> after formal criminal proceedings of attempted rape,
> obviously a sex offense.  Further, [plaintiff] had been
> previously convicted of rape in 1977 and rape and
> attempted sexual assault in 1979.  An inmate who has
> been convicted of a sex crime in a prior adversarial
> setting, whether as the result of a bench trial, jury
> trial, or plea agreement, has received the minimum
> protections required by due process.  Prison officials
> need do no more than notify such an inmate that he has
> been classified as a sex offender because of his prior
> conviction for a sex crime.

<u>Neal</u>, 131 F.3d at 831.  Here, despite the fact that Pratt was not

convicted of a "sex crime," the DOC has, based upon a review of

the circumstances related to his conviction, as well as an

evaluation of him, recommended that he participate in the sexual

offender program.  Assuming, for the moment, that under those

circumstances an inmate is entitled to notice of the decision,

the reasons for that decision, and a hearing at which he might

present evidence to challenge that decision, Pratt's entitlement

to those procedural protections were not so clearly and

unambiguously established as to preclude defendants from

obtaining qualified immunity.

A government official is entitled to qualified immunity from personal liability if the challenged "'conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Aversa v. United States, 99 F.3d 1200, 1214 (1st Cir. 1996) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The challenged conduct is measured by a standard of objective reasonableness, that is: "Could an objectively reasonable official, situated similarly to the defendant, have believed that his conduct did not violate the plaintiff['s] constitutional rights, in light of clearly established law and the information possessed by the defendant at the time of the allegedly wrongful conduct?"  Wood v. Clemons, 89 F.3d 922, 927 (1st Cir. 1996).  And, as the Court of Appeals for the First Circuit has observed,

> To determine a defendant's eligibility for qualified
> immunity, courts must define the right asserted by the
> plaintiff at an appropriate level of generality and ask
> whether, so characterized, that right was clearly
> established when the harm-inducing conduct allegedly
> took place.  This does not mean that a right is clearly
> established only if there is precedent of considerable
> factual similarity.  It does mean, however, that the
> law must have defined the right in a quite specific
> manner, and that the announcement of the rule
> establishing the right must have been unambiguous and
> widespread, such that the unlawfulness of particular
> conduct will be apparent ex ante to reasonable public
> officials.  After all, qualified immunity for public
> officials serves important societal purposes, and it is

therefore meant to protect all but the plainly
incompetent or those who knowingly violate the law.

Brady v. Dill, 187 F.3d 104, 115–16 (1st Cir. 1999) (citations
and internal quotation marks omitted) (emphasis supplied).


Importantly, as suggested in Dill, a defendant does not lose
the protection of qualified immunity if he acts mistakenly, as
long as his mistake was objectively reasonable, as qualified
immunity is intended to protect "'all but the plainly incompetent
or those who knowingly violate the law.'"  Veilleux v. Perschau,
101 F.3d 1, 3 (1st Cir. 1996) (quoting Malley v. Briggs, 475 U.S.
335, 341 (1986)).  Here, even viewing the record in the light
most favorable to Pratt, it is impossible to conclude that, by
evaluating Pratt, reviewing the circumstances surrounding his
conviction, and recommending that he participate in the prison's
sexual offender program, defendants were plainly incompetent or
knowingly violated his clearly established constitutional rights.


Stated somewhat differently, in order to prevail, Pratt must
demonstrate that he has a clearly established, constitutionally
protected right to a hearing (complete with the due process
protections identified in Sandin) before prison officials may
make a non–binding recommendation that he participate in the

18

sexual offender program (i.e., a recommendation that is not linked to his eligibility for good time credits or the entirely discretionary awarding of parole). The Ninth Circuit's opinion in <u>Neal</u> does not stand for that proposition, since the inmates in that case were required to complete the sexual offender program as a "precondition to parole eligibility." <u>Neal</u>, 131 F.3d at 827. Nor does the Tenth Circuit's opinion <u>Chambers</u>, since the inmate was unable to earn some good time credits if he refused to participate in recommended prison programming. <u>Chambers</u>, 205 F.3d at 1240.

Of the cases identified in the Report and Recommendation and presumably (albeit implicitly) relied upon by Pratt, only <u>Kirby</u> goes so far as to hold that an "inmate who has never been convicted of a sex crime is entitled to due process before the state declares him to be a sex offender." 195 F.3d at 1292. The Court of Appeals for the First Circuit has yet to reach such a far-reaching decision, nor has this court's own research revealed any other federal circuit courts of appeals that have embraced the full holding in <u>Kirby</u>.[2]

---

[2]     In fact, several courts have considered and rejected the reasoning embraced by the <u>Kirby</u> court. <u>See, e.g.</u>, <u>Grennier v. Frank</u>, 2005 WL 2076432 (W.D. Wis. Aug. 25, 2005) ("In <u>Neal</u>, the court acknowledged that a ruling in the inmates' favor would

Consequently, even assuming Pratt was deprived of a protected liberty interest when DOC officials recommended that he participate in the sexual offender program (i.e., to the extent that recommendation can be said to have "labeled" him a sex offender), and even assuming he was denied adequate procedural protections prior to that deprivation, those constitutional rights were not, at the time, clearly established. Under those circumstances, defendants would plainly be entitled to qualified immunity. See, e.g., Williams v. Ballard, 466 F.3d 330, 333 (5th Cir. 2006) ("Even if we were to consider [Kirby and Chambers], the district court correctly concluded they do little to render [plaintiff's] right clearly established: the prisoner in Chambers lost accumulated good time credits when he refused to accept a sex-offender classification while in prison, a liberty interest different from that here, and in Kirby the court appears to have found a due process violation on the basis of stigma alone,

_____

not 'guarantee parole or necessarily shorten their sentences by a single day,' but concluded nevertheless that the inmates had a liberty interest in becoming eligible for parole consideration under the Hawaiian parole scheme at issue. Although the Court of Appeals for the Ninth Circuit was willing to hold that an inmate had a liberty interest in discretionary parole, the Court of Appeals for the Seventh Circuit is not."); Talouzi v. O'Brien, 2006 WL 625292 at *7 (E.D. Ky. March 10, 2006) ("This Court finds that there is no due process violation herein because there is no liberty interest with regard to the sex offender [classification].").

contrary to our precedent.  Consequently, even if consideration
of these cases made the number of cases sufficient, the lack of
consistency among their rules makes 'the contours of the right'
not 'sufficiently clear.'") (citations omitted).


II.  <u>The Disciplinary Charges</u>.

It is, perhaps, appropriate to note at the outset that Pratt
frequently asserts that he was denied due process in disciplinary
proceedings in which he was exposed to the <u>possible</u> loss of
accrued good time credits.  <u>See, e.g.</u>, Objection to motion for
summary judgment (document no. 146) at paras. 16 and 17.  But,
Pratt does not specifically allege, nor is there any evidence to
suggest, that he was ever actually deprived of any good time
credits.  Even if he <u>had</u> been deprived of such credits, Pratt's
proper remedy would be a petition for habeas corpus relief, not a
§ 1983 action.  <u>See generally</u> <u>Paladin v. Rivas</u>, 05-cv-079-SM,
2007 DNH 122 (September 28, 2007).  <u>See also</u> <u>Leamer v. Fauver</u>,
288 F.3d 532, 540 (3d Cir. 2002) ("There is only a narrow subset
of actions that arguably might properly be brought as either [a
habeas petition or claim under § 1983], that is, where the
deprivation of rights is such that it necessarily impacts the
fact or length of detention.  In a series of decisions, the
Supreme Court has made it clear that for those cases, the

narrower remedy, the habeas petition, is the only available avenue of relief.  [Edwards v. Balisok, 520 U.S. 641 (1997)] was one of these decisions.  In it, the Court clarified that a plaintiff cannot circumvent the overlap between habeas and § 1983 by raising an issue as an attack upon procedure rather than substance, when resolution of the issue in his favor would necessarily imply the invalidity of the sentence – the fact or duration of detention.")(footnote omitted).

   As to Pratt's remaining claims about the disciplinary charges filed against him, there is no evidence in the record to suggest that he was denied due process (e.g., notice, a hearing, the opportunity to call witnesses, the opportunity to present evidence, etc.).  Instead, his assault on those proceedings seems to arise out of his disagreement with their final outcome.  That is, Pratt feels he was wrongfully convicted of those charges (those to which he did not plead guilty, anyway).  See, e.g., Plaintiff's objection to summary judgment (document no. 146) at para. 16 (explaining how Pratt's version of the relevant facts differs from those found to be true at his disciplinary hearing). Of course, without more, mere disagreement with the outcome of prison disciplinary proceedings does not give rise to a

constitutional claim.  On that basis alone, defendants are
entitled to summary judgment.

Additionally, however, the penalties imposed upon Pratt were
not sufficiently severe to implicate any constitutionally
protected liberty interests.  In his Report and Recommendation,
the Magistrate Judge concluded that Pratt set forth a viable
Fourteenth Amendment procedural due process claim "to the extent
he claims defendants' actions resulted in the loss of accrued
good time credit."  <u>Id</u>. at 25-26.  As noted above, however, such
a claim (to the extent Pratt even advances one) must be brought
in the context of a petition for habeas corpus relief; section
1983 is not the proper vehicle for advancing such claims.

The punishments that were actually imposed on Pratt for his
improper conduct involved the imposition of additional hours of
work duty and the loss of canteen and recreation privileges for a
few days.  <u>See</u> Exhibits H (document no. 139-10) and J (document
no. 139-12) to defendants' memorandum.  Punishments of that sort
are not "atypical and significant hardship[s] on the inmate in
relation to the ordinary incidents of prison life."  <u>Sandin v.</u>
<u>Conner</u>, 515 U.S. 472, 484 (1995).  Consequently, as a matter of
law, Pratt has no § 1983 claim that defendants violated his

constitutionally protected due process rights during the course

of the disciplinary proceedings.  See, e.g., Garland v. Horton,

129 Fed. Appx. 733, 734-735 (3d Cir. 2005) ("The Supreme Court

has recognized an inmate's qualified right to call witnesses in a

disciplinary hearing, and has also stated that the

decisionmaker's conclusion must be supported by at least 'some

evidence.'  In a case such as this one, these due process

protections are not required unless the discipline at issue

imposes an 'atypical and significant hardship on the inmate in

relation to the ordinary incidents of prison life.'  Here,

[plaintiff's] thirty-day placement in the RHU was not the sort of

hardship required to confer a cognizable liberty interest.").

(citations and internal punctuation omitted); Harris v. Chabries,

114 Fed. Appx. 363, 365 (10th Cir. 2004) ("[A]s to his challenge

to the defendants' inmate classification system, housing

assignments, and program assignments, [plaintiff] has failed to

allege 'an atypical and significant hardship ... in relation to

the ordinary incidents of prison life' that would trigger the

protections of the Due Process Clause.") (citations omitted);

Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003)

("Typically, administrative segregation in and of itself does not

implicate a protected liberty interest."); Smith v. Roper, 12

Fed. Appx. 393, 396 (7th Cir. 2001) ("In light of Sandin, the

deprivations that [plaintiff] suffered as a result of the disciplinary proceedings – namely, 22 days in segregation, a six-month loss of privileges associated with his demotion to "C" class, and six days without phone privileges – do not implicate a liberty interest.").

III. Retaliation Claims.

Defendants assert that there is no genuine dispute that all disciplinary charges lodged against Pratt were based solely on his improper behavior while in prison and were not motivated by any desire to retaliate against him.  The same is true, say defendants, with respect to his transfer from Concord to Berlin. Pratt's objection is silent on the issue.  He has not, for example, attempted to point to evidence suggesting that defendants were motivated by a retaliatory animus.

Because Pratt has not filed any affidavits, deposition testimony, or other evidence that undermines defendants' recitation of the relevant facts relating to his retaliation claims, the court will take defendants' statement of facts as uncontested.  See Local Rule 7.2(b)(2) ("All properly supported material facts set forth in the moving party's factual statement shall be deemed admitted unless properly opposed by the adverse

party."). Based upon those undisputed facts, defendants are entitled to judgment as a matter of law as to the retaliation claims identified by the Magistrate Judge in his Report and Recommendation.[3]

IV. Denial of Adequate Medical Care.

In order to prove a section 1983 claim for medical mistreatment, an inmate must show that prison officials demonstrated "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). This test has both subjective (state-of-mind) and objective components. See DesRosiers v. Moran, 949 F.2d 15, 18 (1st Cir. 1991). In Farmer v. Brennan, 511 U.S. 825 (1994), Justice Souter explained the state-of-mind element of deliberate indifference in the context of an Eighth Amendment claim. Id. at 834–847. A prison official is liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847.

---

[3] Parenthetically, the court notes that, in his objection, Pratt says, "Plaintiff did not plead a claim for retaliation for the disciplinary charges stated in defendants' Motion for Summary Judgment." Plaintiff's objection (document no. 146) at 13. Accordingly, although it is not entirely clear, it appears either that Pratt never intended to bring claims alleging unlawful retaliation relating to the disciplinary charges or that he has waived them.

Accordingly, an Eighth Amendment medical mistreatment claim cannot be premised on a theory of simple negligence or medical malpractice; a medical care provider's conduct must go beyond negligence in diagnosing or treating a prisoner's medical condition. Similarly, a constitutional violation does not occur merely because a prisoner happens to disagree with a nurse's or physician's decision regarding the proper course of medical treatment. See Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993) ("The courts have consistently refused to create constitutional claims out of disagreements between prisoners and doctors about the proper course of a prisoner's medical treatment, or to conclude that simple medical malpractice rises to the level of cruel and unusual punishment.").

With regard to the objective component of the deliberate indifference test, the inmate must show that he or she has suffered a serious deprivation of a fundamental right or basic human need. See DesRosiers, 949 F.2d at 18. As the Supreme Court has observed, the Constitution "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (citation and internal

quotation marks omitted).  See also Rhodes v. Chapman, 452 U.S.
337, 347 (1981) ("Conditions must not involve the wanton and
unnecessary infliction of pain, nor may they be grossly
disproportionate to the severity of the crime warranting
imprisonment. . . .  But conditions that cannot be said to be
cruel and unusual under contemporary standards are not
unconstitutional.  To the extent that such conditions are
restrictive and even harsh, they are part of the penalty that
criminal offenders pay for their offenses against society.").

Here, the undisputed facts of record fail to support even
the claim that Pratt received negligent medical care.  The record
certainly does not support Pratt's assertion that defendants were
deliberately indifferent to his serious medical needs and, in so
doing, provided him with care that was so far below acceptable
norms as to be violative of the Eighth Amendment.  See, e.g.,
Exhibit K to defendants' memorandum, Affidavit of Nurse
Practitioner Judy Baker (document no. 139-13) (detailing Pratt's
medical care).  In fact, Pratt himself concedes that, without a
medical expert (which he has not disclosed), "plaintiff cannot
meet his burden of proof."  Plaintiff's objection (document no.
146) at 6.  Consequently, as to Pratt's medical claims,
defendants are entitled to judgment as a matter of law.

V.   Right to Privacy.

Finally, Pratt claims that Nurse Baker and Dr. Eppolito violated his constitutionally protected right to privacy. Specifically, Pratt alleges that he filed a request for tuberculosis and HIV tests, which he delivered in a sealed envelope.  According to Pratt, Dr. Eppolito and/or Nurse Baker responded to that request by using the normal prison mail system – that is, they did not use a sealed envelope.  That, says Pratt, means other inmates and/or corrections officers could have had access to his personal and confidential medical information.

In allowing Pratt's privacy claim to proceed, the Magistrate Judge noted that, although Pratt had alleged the minimal facts necessary to describe a viable claim, he failed to "even allege[] that the correctional staff who received his medical information actually read his files or did anything improper with the contents."  Report and Recommendation at 40-41.  Plainly, to survive defendants' motion for summary judgment, Pratt would need to do more.  But, Pratt's objection does not address his right to privacy claim nor does it respond to defendants' assertion that they are entitled to judgment as a matter of law.  As a result, Pratt has failed to point to any evidence suggesting that any unauthorized third parties, whether DOC staff or other inmates,

actually saw his allegedly confidential submission to medical staff.  Absent such evidence, he cannot prevail on a claim that defendants violated his constitutionally protected right to privacy.

VI.   State Common Law Claims.

Having resolved all of Pratt's federal claims in favor of defendants, the court declines to exercise supplemental jurisdiction over his state law claims.  See generally 28 U.S.C. § 1367(3).  See also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); Camelio v. American Fed'n, 137 F.3d 666, 672 (1st Cir. 1998); DePoutot v. Raffaelly, 2005 DNH 39, 2005 WL 515853 at *9-10 (D.N.H. March 3, 2005).

**Conclusion**

For the foregoing reasons, as well as those set forth in defendants' memorandum and the accompanying exhibits, defendants' motion for summary judgment (document no. 139) is granted.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe
Chief Judge

November 7, 2007

cc: Harvey Pratt, <u>pro</u> <u>se</u>
    Andrew B. Livernois, Esq.
    Nancy Smith, Esq.
    John Vinson, N.H. DOC